IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DANIEL RAY METCALF, #268903, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-0002-WHA |
| | ) | [WO] |
| | ) | |
| GARY HETZEL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, Daniel Ray Metcalf ("Metcalf"), an indigent state

inmate, alleges that correctional officials acted with deliberate indifference to his safety by

failing to protect him from attack by fellow inmates, Rodney Anderson, Courtney Jenkins

and Deztion Brooks, during a previous term of incarceration at the Easterling Correctional

Facility ("Easterling").  *Complaint - Doc. No. 1* at 2-3.  Metcalf names Warden J. C. Giles,

Kim Thomas, the former commissioner for the Alabama Department of Corrections, and

Officer Rodney Wilson as defendants in this cause of action.  Metcalf seeks a declaratory

judgment, injunctive relief and monetary damages from the defendants for the alleged

violations of his constitutional rights.  *Id*. at 4.

The defendants filed a special report and supporting evidentiary materials addressing

Metcalf's claims for relief.  Pursuant to the orders entered in this case, the court deems it

appropriate to treat the defendants' report as a motion for summary judgment.  *Order of March 5, 2013 - Doc. No. 19*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response to the report made under penalty of perjury, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party

must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Metcalf is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson*, 477

U.S. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position

will not suffice; there must be enough of a showing that the [trier of fact] could reasonably

find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91

L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).

Conclusory allegations based on subjective beliefs are likewise insufficient to create a

genuine dispute of material fact and, therefore, do not suffice to oppose a motion for

summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A

plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence,

are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916

(11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing

beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman

v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own

conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General

Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without

specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set

forth specific facts supported by requisite evidence sufficient to establish the existence of

an element essential to his case and on which the plaintiff will bear the burden of proof at

trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477

U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record .... [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243

(11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this

court's disregard of elementary principles of production and proof in a civil case. The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Metcalf has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants. *Matsushita*, *supra*.

## III. DISCUSSION[2]

### A. Absolute Immunity

To the extent Metcalf sues the defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations

---

[2]The court limits its review to the claims set forth in the complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 Fed. App'x 905, 909-910 (11th Cir. 2012) (plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11thCir. 2002) (district court correctly refused to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## B. Lack of Standing - Attack on Inmate Benjamin McGhee

Standing is a cornerstone of American jurisprudence on which jurisdiction lies. "[A] litigant may only assert his own constitutional rights or immunities." *McGowan v. Maryland*, 366 U.S. 420, 429 (1961), citing *United States v. Raines*, 362 U.S. 17, 22 (1960); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 218-219 (1974) (plaintiff must assert a legally cognizable injury in fact before federal courts have jurisdiction). "The essence of a standing question is whether the plaintiff has alleged 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions[.]' *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703 7 L.Ed.2d 663 (1962)." *Saladin v. City of Milledgeville*, 812 F.2d 687, 690

9

(11th Cir. 1987); *Harris v. McRae*, 448 U.S. 297, 320 (1981) (same).

Standing involves two aspects. The first is the minimum "case or controversy" constitutional requirement of Article III. *Saladin*, 812 F.2d at 690. "To satisfy this 'irreducible' constitutional minimum required for standing, a litigant must show 1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action." *Saladin*, 812 F.2d at 690, citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Warth v. Seldin*, 422 U.S. 490, 499 (1975). If any element is lacking, a plaintiff's claim is not viable. In addition, the Supreme Court has established several requirements based on prudential considerations. *Saladin*, 812 F.2d at 690 (internal citations omitted) ("The Supreme Court has also stated that, in addition to these essential constitutional requirements, a court should consider the case in light of three principles which might counsel judicial constraint, referred to as 'prudential' considerations.... Those considerations are 1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

10

To the extent the complaint references a claim relative to the defendants failure to protect inmate McGhee from attack, Metcalf is not "asserting [his] ... own legal rights and interests [but] rather ... the legal rights and interests of third parties." *Saladin*, 812 F.2d at 690.  In accordance with applicable federal law as set forth herein, Metcalf lacks standing to assert this claim.  Summary judgment on such claim is due to be granted in favor of the defendants.

### C.  Deliberate Indifference to Safety - Failure to Protect

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-845 (1994) (internal quotations and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials

responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of ... the prison staff. They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984). The Eleventh Circuit has, however, "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety. *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)....'" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005). "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.' *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation, including one alleging deliberate indifference to an inmate's safety. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a

deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-1029 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and *he must also draw the inference*.... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ...  *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment*."  *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."

*Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference....  Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted).  Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983."  *Id*.

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence....  However, in order for liability to attach, the officer must have been in a position to intervene."  *Terry*

14

*v. Bailey*, 376 Fed. Appx. 894, 896 (11th Cir. 2010) (*citing Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).  The plaintiff has the burden of showing that the defendant was in a position to intervene but failed to do so.  *Ledlow v. Givens*, 500 Fed. Appx. 910, 914 (11th Cir. 2012) (*citing Hadley v. Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir. 2008)).

Consequently, to survive the properly supported motion for summary judgment filed by the defendants, Metcalf must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner."  *Johnson v. Boyd*, 568 Fed. Appx. 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100.  If he establishes these objective elements, Metcalf must then satisfy the subjective component.  To do so, Metcalf "must [show] that the defendant subjectively knew that [he] faced a substantial risk of serious harm.  The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.  [*McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)].  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear ***felt by [the] [p]laintiff*.**"  *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added).  Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also draw that inference."  *Id*. at 1349 (quotations omitted).").

*Johnston v. Crosby*, 135 Fed. Appx. 375, 377 (11th Cir. 2005)

Metcalf asserts that on December 12, 2012 while in the gym at Easterling, he observed inmate Rodney Anderson attack his friend, inmate Benjamin McGhee, with an inmate-made shank in the form of an ice pick. *Attachment to the Complaint - Doc. No. I-1* at 1. In his statement to correctional officials, inmate McGhee advised that during the attack by Anderson defendant Richards "called for back up." *Defendants' Exh. 7 to the Special Report - Doc. No. 18-7.* Anderson ceased his assault on McGhee, took "off running and [threw] the ice pick into the bleachers, then ran and jumped on the stage and took another inmate's walking cane." *Attachment to the Complaint - Doc. No. I-1* at 1. Metcalf states that he approached McGhee to check on him "and at that time Inmate Anderson hit me in the head with the walking cane he had taken from the other inmate." *Id*. When Metcalf and McGhee attempted to exit the gym, Anderson, Jenkins and Brooks "jumped on [them].... So by this time officers came running through the door and they began to spray [mace] on all of us, separated us, handcuffed us, and then took us to the healthcare unit to have us treated.... I was only checking on my friend ... and while doing so I was attacked by [these other inmates] for no reason at all." *Id*. at 1-2.

Metcalf alleges that the defendants acted with deliberate indifference to his safety with respect to the attack perpetrated against him by inmates Anderson, Jenkins and Brooks. In support of this assertion, Metcalf argues that the defendants failed to ensure his

safety from this attack because the facility was overcrowded, understaffed and "only (1) officer [was] within the 'gym' on the night of the attack." *Complaint - Doc. No. 1* at 3. Metcalf further complains that defendant Wilson failed to intervene to stop the attack perpetuated against him. *Id*. at 2. With respect to this latter assertion, Metcalf alleges that Wilson "failed to perform his duties to stop infliction of bodily harm upon the petitioner" by other inmates, at least one of whom was armed with weapons. *Id.* Metcalf does not contend that he complained to any prison official, including defendant Wilson, that he was in danger of being attacked by inmates Anderson, Jenkins or Brooks and the record is devoid of evidence to suggest that Metcalf notified any prison official of a prior incident or threat by these other inmates from which they could infer that a substantial risk of harm existed to Metcalf at the time of the challenged attack. Instead, Metcalf concedes that he "was attacked for no reason at all[,]" *Attachment to the Complaint - Doc. No. I-1* at 2, and merely asserts that the defendants acted with deliberate indifference to the conditions present at Easterling, i.e., overcrowding and under staffing, and that this indifference resulted in the attack upon him. *Complaint - Doc. No. 1* at 3; *Plaintiff's Response in Opposition - Doc. No. 20* at 2 ("It is plaintiff's belief that had the prison in question been properly staffed the plaintiff would not have suffered the injuries in question in that had more than one officer ... been securing and monitoring the gym ... the plaintiff would not have been assaulted by another inmate."). In his response, Metcalf further alleges that the

17

defendants knew that gang members were housed at Easterling warranting the need for "sufficient security" and, therefore, the assignment of only one guard to secure the gym constituted deliberate indifference to his safety. *Id* at 1.

(i)  <u>Officer Wilson - Failure to Intervene</u>.  The crux of the allegation made by Metcalf against defendant Wilson concerns Wilson's failure to physically intervene between the inmates involved in the incident when he first observed the attack on Metcalf. "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence....  However, in order for liability to attach, the officer must have been in a position to intervene." *Terry*, 376 Fed. Appx. at 896.  "An officer who fails to intervene in a fight between inmates can only be held liable if he 'was physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff.'  *Glispy v. Raymond*, 2009 WL 2762636 (S.D.Fla., Aug.28, 2009) (citing *Ensley [v. Soper]*, 142 F.3d [1402], 1407 [11th Cir. 1998)]; *Byrd v. Clark*, 783 F.2d 1002 (11th Cir. 1986))."  *Seals v. Marcus*, 2013 WL 656873, at *7 (M.D.Ga. 2013).  The plaintiff has the burden of demonstrating that the defendant was in a position to intervene but failed to do so.  *Ledlow*, 500 Fed. Appx. at 914.

Metcalf claims that defendant Wilson failed to adequately respond to the attack against him.  Defendant Wilson denies Metcalf's allegation and asserts that under the circumstances at hand he undertook appropriate measures to gain control of the situation

when he became aware of the altercation.  Specifically, defendant Wilson states that:

> On December 12, 2102, I ... was assigned as the Gym Officer for Night B Shift.  At approximately 6:50PM, I observed Inmates Rodney Anderson, ... Benjamine McGhee, ... Courtney Jenkins, ... Deztion Brooks, ... and Daniel Metcalf ... fighting on the basketball floor.  I immediately tried to break up the fight by giving a direct order to stop fighting.  All the inmates continued to fight.  At approximately 6:53PM, I called for assistance via hand held radio, and advised Sergeant Jonathan Peavy of the fight in the gym.  At approximately 6:55PM, Sgt. Peavy and Officers Bernard Spann, Jason Atkinson, Waylon Cousins, and Timothy Issac entered the gym. Officer Spann verbally ordered the inmates to stop fighting.  The inmates ignored the order and continued to fight.  Officer Spann pulled his can of Sabre Red Chemical Agent, shouted, "Gas!" and sprayed a one second burst of spray into the inmates' faces.  The inmates stopped fighting and were placed in handcuffs to the rear.  Only the minimum amount of force necessary was used in the incident.  During the incident I did perform my duties to prevent harm to any of the inmates involved.

*Defendants' Exh. C (Aff. of Rodney Wilson) - Doc. No. 18-3.*

The evidentiary materials before the court establish that "[w]hen Correctional Officers are faced with a threat they are trained to make a call for backup immediately.  In situations where an officer is faced with quelling a disturbance involving the use of deadly weapons or large numbers of inmates, officers are trained to give verbal commands and wait until backup has arrived before engaging the threat."  *Defendants' Exhibit F (Aff. of Wendy D. Williams) - Doc. No. 18-6* at 2.  In accordance with his training and correctional protocol, "Officer Wilson acted appropriately by calling for assistance to quell the disturbance.  Officer Wilson is not certified to carry and use Sabre Red chemical agent and therefore was unable to utilize the agent to help break up the disturbance.  All security

personnel are not required to be certified to carry Sabre Red [and only officers with proper certification are allowed to carry a chemical agent]. Officers certified to carry the chemical agent arrived at the scene and utilized the agent to restore security." *Defendants' Exh. E (Aff. of Kenneth Sconyers) - Doc. No. 18-5*. Correctional personnel immediately provided the inmates access to medical personnel for treatment of any injuries suffered in the altercation. *Defendants' Exhibit B (Documents in Support of Aff. of Gary Hetzel) - Doc. No. 18-2* at 5-6. After the inmates had been examined and provided necessary treatment for their injuries, correctional officials placed them in Administrative Segregation pending disciplinary action for their involvement in the incident. *Id.* Inmate Anderson was charged with fighting with a weapon while the other four inmates, including the plaintiff, were charged with fighting without a weapon. *Id.* at 6.

It is undisputed that during the altercation inmate Anderson was armed with a shank and a cane whereas defendant Wilson was not in possession of any safety equipment which could be used in defense of either himself or Metcalf. Wilson issued verbal orders that the inmates stop fighting, all of which were ignored, and radioed for assistance from other correctional officers. Officers Peavy, Spann, Atkinson, Cousins and Issac responded to Wilson's call for assistance and entered the gym. Officer Spann again ordered the inmates to stop fighting but this order was also ignored. Officer Spann then applied his chemical agent to the inmates at which time they stopped fighting. Based on the foregoing, the court

concludes Metcalf has failed to establish that an unarmed defendant Wilson was in a position to intervene on his behalf against an armed assailant during an altercation which involved several inmates. In addition, Metcalf has not demonstrated that an unreasonable or inordinate amount of time passed from the time the assault began until Officer Spann arrived and applied a chemical agent to the inmates. Moreover, the fact that defendant Wilson did not immediately interject himself into the altercation before backup arrived does not amount to deliberate indifference. *Terry*, 376 Fed. Appx. at 896; *Ledlow*, 500 Fed. Appx. at 914 (holding that district court properly granted summary judgment to defendant correctional officer where plaintiff "presented no evidence that [officer] had the ability to reasonably insert himself between [the inmates] to stop the assault without additional help" nor had he presented "evidence ... as to how long this assault went on before intervention occurred."). Finally, "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence. The officer[] violated no 'clearly established' law by falling to intervene while unarmed." *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006); *MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995) (prison officials did not act with deliberate indifference when, in accordance with prison policy, they called for additional staff before intervening in an inmate fight). Consequently, defendant Wilson is entitled to summary judgment on the claim lodged against him by Metcalf for failure to intervene.

(ii) <u>Inadequate Security - Failure to Protect from Attack</u>.  Metcalf maintains that the defendants failed to protect him from attack by the other inmates due to overcrowding and under staffing which resulted in only one guard being assigned to monitor numerous inmates in the gym.  *Complaint - Doc. No. 1* at 2-3.  In his response to the correctional defendants' report, Metcalf also asserts that the defendants' knowledge of the presence of gang members in the prison system constitutes sufficient knowledge to find they acted with deliberate indifference to his safety.  *Plaintiff's Response in Opposition - Doc. No. 20* at 2.

The defendants adamantly deny acting with deliberate indifference to Metcalf's safety.  Specifically, they maintain that major incidents, such as the altercation involving Metcalf, rarely occur in the gym.  *Defendants' Exh. E (Aff. of Kenneth Sconyers) - Doc. No. 18-5*.  Thus, the defendants maintain that one officer is able to provide adequate security for that area of the prison and Officer Wilson was present in the gym when the altercation occurred.  *Id*.; *Defendants' Exhibit B (Aff. of Gary Hetzel) - Doc. No. 18-2* at 1. Finally, the defendants argue that although Easterling may house a number of inmates beyond its current design capacity and officials "do face staffing challenges ... adequate and reasonable security" is provided at the facility.  *Defendants' Exhibit E (Aff. of Kenneth Sconyers) - Doc. No. 18-5*.

Metcalf alleges that the defendants acted with deliberate indifference to the

overcrowding and under staffing at Easterling which resulted in the attack by other inmates on December 12, 2012.  The record is devoid of evidence that Metcalf informed any of the defendants he was at risk of attack from inmates Anderson, Jenkins or Brooks. Furthermore, his specious allegation that the mere presence of gang members at Easterling establishes deliberate indifference to his safety is without merit.  The defendants assert that incidents of inmate-on-inmate attacks were not widespread or rampant in the gym at Easterling and maintain that the officer assigned to and present in the gym constituted an appropriate security measure at the time of the incident made the basis of this complaint. The defendants further state that they had no knowledge of any impending risk of harm, substantial or otherwise, posed by any other inmate to Metcalf.

There is no probative evidence before the court of "an objectively substantial serious risk of harm" posed by inmates Anderson, Jenkins and Brooks to Metcalf prior to the attack at issue as is necessary to establish deliberate indifference.  *Marsh*, 268 F.3d at 1028-1029; *Johnson v. Boyd*, 568 Fed. Appx. 719, 722 (11th Cir. 2014) (Inmate-attacker's destructive behavior in cell prior to attack did "not sufficiently allege that [attacker's] behavior created a 'strong likelihood' of injury to [inmate-plaintiff]."); *Carter*, 352 F.3d at 1350 (Deliberate indifference requires "much more than mere awareness of [an inmate's] generally problematic nature.").  Moreover, even if Metcalf had satisfied the objective component, his deliberate indifference claim nevertheless fails as he has not established that the

23

defendants were subjectively aware of any risk of harm to him posed by the inmates involved in the attack at issue. *Johnson*, 568 Fed. Appx. at 722 (complaint properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]."); *McBride v. Rivers*, 170 Fed. Appx. 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" where Plaintiff merely advised he "had problems" with fellow inmate and was "in fear for [his] life."); *Johnston*, 135 Fed. Appx. at 377 (Where allegations simply inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [fellow inmate]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt."); *Chatham v. Adcock*, 334 Fed. Appx. 281, 293-294 (11th Cir. 2009) ("[A]lthough Plaintiff asserts that [fellow inmate] threatened him repeatedly in the days before the assault, Plaintiff has not identified any specific 'serious threat' from [fellow inmate], which he then reported to [the defendants].... The fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the

24

subjective awareness requirement.'"); *Murphy v. Turpin*, 159 Fed. Appx. 945, 948 (11th Cir. 2005) ("[W]e readily conclude the district court did not err by dismissing [Plaintiff's] failure-to-protect charge for failure to state a claim. While [Plaintiff] alleged he requested protection from certain inmates and that the defendants knew about his request for protection from his original cellmate, prisoner Neisler, he did not allege that the defendants had notice that he was in danger from Thomas, the inmate who attacked him.  Simply put, the allegations of [Plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack by Thomas.  Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from Thomas and failed to take protective measures, his claim fails."); *Gooden v. Mormon*, 524 Fed. Appx. 593, 596 (11th Cir. 2013) (Plaintiff alleged Defendant "should have known that [allowing inmates in his cell to clean a water spill] ... exposed him to serious risk of injury because the other inmates appeared to be in a hostile mood and made aggravating remarks about having to clean up the spill in his cell. Though this purportedly led to an unfortunate incident, the allegations fail to establish that [the officer] had subjective knowledge that [Plaintiff] could be seriously harmed."); *Staley v. Owens*, 367 Fed. Appx. 102, 108 (11th Cir. 2010) (Plaintiff failed to demonstrate supervisory liability as the mere fact that isolated inmate assaults may have occurred over a span of several

years "is not sufficient to establish that there was a history of widespread abuses that supervisors failed to reasonably respond to."); *Harrison v. Culliver*, 746 F3d 1288, 1300 (11th Cir. 2014) (Although increasing the number of officers in an area of the facility "may have improved security, [the warden's] decision not to do so did not create a substantial risk of harm. *Cf. Connick v. Thompson*, [563] U.S. [51], ----, 131 S.Ct. 1350, 1363, 179 L.Ed.2d 417 (2011) ('[Section 1983] does not provide plaintiffs or courts *carte blance* to micromanage local governments throughout the United States.'"); *Purcell*, 400 F.3d at 1321 (Despite  occurrence of previous inmate attacks at the jail, conditions, including permitting inmates to play cards, gamble and keep money in their cells, "failed to pose the substantial risk of serious harm necessary for a violation of the federal Constitution" where inmates were classified by the nature of their offenses, segregated based on potential conflicts with other inmates, adequate staff was present at the time of the attack, serious inmate-on-inmate violence was not rampant, fights that occurred were not linked to a recurring specific cause and jailers had a history of punishing inmate violence.). Moreover, the mere fact that gang members are present in the prison population fails to establish that the defendants had subjective knowledge that inmates Anderson, Jenkins and Brooks posed a substantial risk of harm to Metcalf.  In light of the foregoing, summary judgment is due to be granted in favor of the defendants on the claim alleging that they acted with deliberate indifference to Metcalf's safety due to overcrowding and under

staffing.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before November 10, 2015.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also*

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

    Done this 22nd day of October, 2015.


           /s/Terry F. Moorer
           TERRY F. MOORER
           UNITED STATES MAGISTRATE JUDGE